IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICKY CAGLE                                                                            PLAINTIFF

                v.                           Civil No. 05-2111

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                             DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff Ricky Cagle brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423, and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## **Procedural and Factual Background**

The plaintiff filed his applications for DIB and SSI on May 16, 2003, alleging an onset date of December 1, 2002. (Tr. 59-61, 162-164.) The applications were initially denied (Tr. 30-31, 165) and those denials were upheld upon reconsideration (Tr. 32-33, 171). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 42.)

On May 6, 2004, a hearing was held by the ALJ. The plaintiff was represented by counsel at this hearing. (Tr. 174.) The ALJ issued an unfavorable ruling on September 8, 2004 deciding that the plaintiff was not disabled within the meaning of the Act. (Tr. 16-28.) The

plaintiff then requested a review of the hearing by the Appeals Council (Tr. 6-15), which denied that request on May 25, 2005 (Tr. 3-5); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed his complaint with this court on July 27, 2005, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 10, 11.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 4.)

At the time of the hearing, plaintiff was 38 years of age. He completed high school, and he had training as a welder. (Tr. 81-82, 181-182.) Plaintiff worked as a welder/millwright from 1985 until December 2002, when he claims that the pain in his back and hip became such that he could no longer work. (Tr. 183.) After December 2002, he received unemployment benefits afterwards until sometime in 2003. (Tr. 184.) Plaintiff testified that he has trouble sleeping at night because of the pain. (Tr. 186.) He takes hydrocodone before going to bed and takes Tylenol during the day for the pain. He also takes Naprosyn, an anti-inflammatory. (Tr. 187, 190.) He testified that he no longer does yard work and spends his days watching TV or listening to the radio. He visits with this parents and some friends during the day. He testified that he does not grocery shop or cook. He testified that he was an avid hunter and fisherman, but since he quit working he has not done any hunting or fishing because of the pain. Cagle further testified that he lies down three to four hours per day and sits in a recliner the other hours of the day. He testified that his wife does the housework, cooking, and most of the driving. Cagle said that he sometime accompanies his wife to Wal-Mart and will walk with her until his back begins to hurt too much, then he will find a place to sit and wait for her to finish shopping. His wife and children carry bags into the house. Plaintiff testified that he no longer attends church because

-2-

he is unable to sit for that length of time. Plaintiff stated that he is able to sit in a straight-backed chair for up to 20 minutes before he needs to stand. Plaintiff says that he is able to walk approximately 50 yards before stopping to rest. (Tr. 186-197.)

In October 2000, plaintiff saw Dr. Michael Westbrook with complaints of hip and left leg pain that had been hurting for eight months. At that time, Dr. Westbrook diagnosed plaintiff, after obtaining x-rays, with grade II spondylolisthesis and prescribed Vioxx and Lorcet.

Plaintiff reports that his treating physician is Dr. Carrick, who plaintiff see about once a month and began seeing when he stopped working. (Tr. 193.) The record reflects that plaintiff saw Dr. Carrick on April 9, 2003 for complaints of neck, back, hip, and leg pain. Upon evaluation, Dr. Carrick noted that straight leg raising on the right was only to 60 degrees with some pain and on the left to 20 degrees with pain. He also noted that plaintiff had "some sciatic irritation." Dr. Carrick opined that plaintiff likely had sciatica, and ordered x-rays of his hip. Dr. Carrick prescribed Naprosyn and Lorcet. (Tr. 143.)

The April 9, 2003 x-ray results revealed a Grade I-II anterolisthesis of L5 and S1 with a probable associated spondylolysis. (Tr. 144.)

On April 16, 2003, Dr. Carrick diagnosed plaintiff with spondylolisthesis and spondylolysis. Dr. Carrick noted that plaintiff needed to see a neurosurgeon, and Dr.Carrick would make that appointment for Cagle. Plaintiff received regular refills on this prescriptions for Lorcet. (Tr. 140.)

On April 30, 2003, a Lumbar Spine MRI was performed on Cagle. That MRI revealed

> At L5-S1, there is grade I-II anterolisthesis of L5 on S1, end plate reactive change/marrow edema with bilateral L5 pars defects and some fluid along the facet joints, left more than right and along the pars defects at L5. Additionally,

there is some asymmetric disc bulge/probable disc protrusion on the left with some left greater than right foraminal stenosis at L5-S1. There is some right posterolateral bulge as well at L5-S1. (Tr. 141.)

On June 27, 2003, Cagle saw Dr. Larry G. Armstrong, a neurosurgeon. Dr. Armstrong performed a physical examination of the plaintiff, and found that his strength was 5/5 in the lower extremities without deficits noted, his sensory dermatomal distributions were intact to pinprick and temperature throughout all dematomes except the left L5 which was diminished as compared to the right. Further x-rays were performed with flexion and extension views. These x-rays revealed pars in articularis defect at L5 bilaterally and anterolisthesis grade 2 of L5 on S1 which does not move significantly with flexion and extension. A further detailed review of the MRI also supports the finding of "the bilateral pars defect at L5 with anterolisthesis, grade 2, L5 on S1 with significant neuroforaminal stenosis, left greater than right." Dr. Armstrong diagnosed plaintiff with spondylolisthesis of L5-S1 and "intractable left lower extremity radiculopathy secondary to anterolisthesis and neuroforaminal narrowing and scissoring of the nerve roots." Dr. Armstrong recommended that plaintiff seek "lumbosacral fusion with instrumentation and stabilization at L5-S1 utilizing interbody fusion if possible in addition to posterior spinal fusion and instrumentation." It was noted that plaintiff would need to stop smoking for a fusion to be successful. Dr. Armstrong noted that Cagle was applying for disability "and certainly, his condition at this point is where he cannot work to his present job's capacity with his underlying pathology." (Tr. 135-137.)

On July 15, 2003, Cagle saw Dr. Carrick again. After reviewing Dr. Armstrong's findings, Dr. Carrick noted that plaintiff would require surgery to repair his back and that he would have to quit smoking before the surgery could occur. Dr. Carrick opined that plaintiff's

AO72A
(Rev. 8/82)

condition ruled out "work of any kind at all" and that this fact "is something that he is going to have to come to grips with." Dr. Carrick placed Cagle on a smoking cessation program in an attempt to prepare him for surgery. (Tr. 139.)

In March 2004, Cagle visited the Good Samaritan Clinic where he received a refill of his Naprosyn medication. (Tr. 155.)

On April 26, 2004, Dr. Carrick examined plaintiff. Dr. Carrick noted that plaintiff was seeking disability and that "[t]here is no way that this guy will be able to do any type of work." Dr. Carrick noted that plaintiff had pain and numbness radiating down his left leg which was caused by an extruded disc. Dr. Carrick also noted that Cagle had "a little bit of spinal stenosis." In referencing the x-ray films, Dr. Carrick remarked, "[h]e is a reasonably young guy and the films were just amazing." (Tr. 159.)

On May 4, 2004, Dr. Carrick completed a physical residual functional capacity evaluation on Cagle. According to Dr. Carrick's evaluation, plaintiff could (1) sit for only 10-30 minutes at a time, stand for 10-30 minutes at a time, and walk for 10-20 minutes at a time, (2) sit for 2-4 hours total, stand 1 hour total, and walk one hour total in an 8-hour workday, and (3) occasionally lift and carry up to 5 pounds. Further, Dr. Carrick opined that plaintiff's abilities to push and pull leg controls was limited in both right and left legs and plaintiff should not push or pull or work above shoulder level, however plaintiff was not restricted in his abilities to perform grasping or fingering motions. Dr. Carrick found that Cagle could occasionally reach and stoop; but never bend, squat, crawl, climb, or crouch. Cagle was totally restricted from activities involving unprotected heights, being around moving machinery, and vibrations and was markedly restricted in activities involving exposure to dust, fumes, and gases, and driving. Dr.

Carrick noted that his RFC findings were based on plaintiff's diagnosis of spinal stenosis, protruded lumbar disc, degenerative disc disease, spondylolisthesis of L5-S1, and radiculopathy of the left leg. (Tr. 156-158.)

In his remarks, Dr. Carrick adds,

> Having treated Mr. Cagle in reference to this discogenic disease, I have established the physical limitations which I believe to be accurate to the best of my professional judgment. I must add that his pain is real, chronic, and control resistant. Any activity greater than the most sedentary acts of daily living could not be performed on a sustained basis. These conditions have been confirmed by objective findings including X-rays, MRI's, personal care and treatment, and observation. Plus specific neurological testing including straight leg raising, etc. I also believe that his chronic pain which I would rate at least marked to severe most of the time would significantly affect his ability to perform non-exertional functions including the ability to complete a normal work day or week, or function without unacceptable numbers of frequency of rest periods. His memory, concentration, stress tolerance, and ability to deal with others would also be significantly affective [sic]. Without significant relief, surgically or otherwise, this individual must be considered permanently and totally disabled. (Tr. 158.)

The ALJ found that plaintiff's spondylolisthesis of L5-S1 and intractable left lower extremity radiculopathy, moderate disc protrusions in his thoracic spine and disc bulging and spurring in his cervical spine were severe conditions, but not singularly or in combination of such severity to meet or equal that listing in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that Cagle's allegations regarding his physical limitations was not credible. While the ALJ found that plaintiff could not perform his past relevant work, he found that plaintiff could perform substantially all of the full range of light work, and thus is not disabled. (Tr. 26-27.)

On appeal, plaintiff argues that (1) plaintiff's impairments meet the listing for 1.04 in Appendix 1, (2) the ALJ improperly discredits plaintiff's subjective complaints of pain, (3) the ALJ improperly evaluated the medical opinions and inaccurately determined plaintiff's RFC, and

AO72A
(Rev. 8/82)

(4) the ALJ improperly determined that there are other jobs that plaintiff could perform by applying the Medical-Vocational Guidelines. (Doc. 10.) In response, the Commissioner argues that plaintiff's condition did not meet the listing of 1.04A, (2) the ALJ properly evaluated the medical opinions of plaintiff's treating physician, (3) the ALJ properly considered plaintiff's subjective complaints of pain under *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984), and (4) the ALJ properly relied on vocational expert testimony in finding that there are a significant number of jobs in the national economy which plaintiff could perform. (Doc. 11.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## Discussion

On appeal, Plaintiff advances several arguments in support of his theory that the Commissioner's decision should be reversed. Plaintiff's argument that the ALJ erred in improperly evaluating the medical opinions and inaccurately determining plaintiff's RFC has merit.

AO72A
(Rev. 8/82)

In finding that the plaintiff retains the residual functional capacity to perform substantially all of the requirements of light work, the ALJ had to disregard the opinions of plaintiff's treating physicians, and rely on the opinion of a physician who had merely reviewed her medical records, and had neither treated nor examined plaintiff.

Under the Commissioner's regulations, a treating physician's opinion is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *See* 20 C.F.R. § 404.1527(d)(2). Accordingly, an ALJ should "give good reasons" for discounting a treating physician's opinion. *Dolph v. Barnhart,* 308 F.3d 876, 878 -879 (8th Cir.2002)..

The treating physician rule is premised, at least in part, on the notion that the treating physician is usually more familiar with the plaintiff's medical condition than are other physicians. *Thomas v. Sullivan,* 928 F.2d 255, 259 n. 3 (8th Cir.1991)*; see* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Generally, more weight is given to the opinion of a specialist about medical issues related to the area of the specialty than to the opinion of a source who is not a specialist. *See* 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5)*; see Hinchey v. Shalala,* 29 F.3d 428 (8th Cir.1994)*.* By contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999), citing *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir.1998). Consequently, reports of non-examining physicians deserve little weight in the overall evaluation of disability, especially in light of evidence to the contrary. *See Woodward v. Schweiker,* 668 F.2d 370, at 374 (8th Cir.1981); *Brand v. Secretary of the Department of Health, Education and Welfare,* 623 F.2d 523, 527 n.6 (8th Cir.1980).

AO72A
(Rev. 8/82)

The fact that a physician is not trained in the statutes and regulations of the Social Security Act does not preclude the physician from evaluating the plaintiff. The physician's findings and conclusions constitute substantial evidence which must be carefully weighed by the ALJ and the Commissioner. Unless there is medical evidence that contradicts or refutes the physician's medical conclusion, the Commissioner is *bound* to treat the treating physician's diagnosis and conclusion as substantial evidence.[1] *Morse v. Shalala*, 16 F.3d 865, 872 -873 (8th Cir.1994), *citing Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *see also Whitney v. Schweiker,* 695 F.2d 784, 789 (7th Cir.1982) ("If the ALJ concludes that a treating physician's evidence is credible, therefore, he should give it controlling weight in the absence of evidence to the contrary because of the treating physician's greater familiarity with the plaintiff's conditions and circumstances."

"[A] factfinder is not permitted to adopt the opinion of a consulting physician who examined claimant only once over the opinion of claimant's treating physician." *Robertson v. Sullivan,* 925 F.2d 1124, 1126 (8th Cir. 1991)*,* and the United States Court of Appeals for the Eighth Circuit has consistently discounted the opinions of non-treating physicians who have seen the patient only once, much less, not at all. *Henderson v. Sullivan,* 930 F.2d 19, 21 (8th Cir.1991); *Riley v. Shalala*, 849 F. Supp. 679, 682 (E.D. Ark. 1993).

In short, the ALJ is not required to believe the opinion of a treating physician when, on

---

[1] This approach is consistent with Social Security Regulations that grant controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. *See* 20 C.F.R. § 416.927(d)(2) (1993) (effective Aug. 1, 1991); *Nelson v. Sullivan,* 966 F.2d 363, 367-68 (8th Cir.1992) (recognizing that "the new regulation merely codifies this circuit's law regarding the opinions of treating physicians").

AO72A
(Rev. 8/82)

balance, the medical evidence convinces him otherwise. As but one example, a treating physician's opinion is not entitled to its usual substantial weight when it is, essentially, a vague, conclusory statement. *Piepgras v. Chater,* 76 F.3d 233, 236 (8th Cir.1996), *citing Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir.1991). Rather, conclusory opinions, which are rendered by a treating physician, are not entitled to greater weight than any other physician's opinion. *Id.; Metz v. Shalala,* 49 F.3d 374, 377 (8th Cir.1995).

The Code of Federal Regulations sets forth additional factors, to assist the ALJ in determining what weight should be afforded to the opinion of a given physician, including a treating physician. The Regulations encourage the ALJ to afford more weight to those opinions which are "more consistent with the record as a whole." *See* 20 C.F.R. § 416.927(d)(4). More weight is also to be extended to "the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *See* 20 C.F.R. § 416.927(d)(5). When presented with a treating physician's opinion, the ALJ is obligated to examine the nature and extent of the treatment relationship, attributing weight to such an opinion that is proportionate to the knowledge that the medical provider has about the plaintiff's impairments. *See* 20 C.F.R. § 416.927(d)(2)(ii). Additionally, the ALJ must either attempt to reconcile the medical reports of the treating physicians with those of the consulting physicians, or direct interrogatories to each of the physicians to obtain a more substantiated opinion of the plaintiff's capabilities and the onset of his disabilities. *See Smith v. Schweiker, 28 F.2d 1158, 1163 (8th Cir.1984); O'Leary v. Schweiker,* 710 F.2d 1334, 1342 (8th Cir.1983); *Funderburg v. Bowen*, 666 F. Supp. 1291, 1298 -1299 (W.D. Ark. 1987).

Here, the ALJ improperly discredits the opinions of Dr. Carrick, plaintiff's treating

physician, based on a determination that (1) Dr. Carrick's opinions are not consistent with the findings of Dr. Armstrong, a neurosurgeon, (2) plaintiff attended the hearing with a tan and what appeared to be a welding burn, (3) plaintiff's reports that he is able to wash a car, mow the lawn, do garden work, go the bank and post office, and drive, and (4) that he received unemployment benefits for a time in 2003, which contradicts his claim of being disabled,.

The ALJ's decision that Dr. Carrick's opinions are contradicted by those of Dr. Armstrong is simply not based on any objective reading of Dr. Armstrong's findings. While Dr. Armstrong does note the negative straight leg test, lack of spasm, no significant S1 joint tenderness or sciatic not tenderness, Dr. Armstrong also finds that forward flexion of the lumbar spine, hyperextension, and side bending to either side causes low back pain and pain in the left leg. Dr. Armstrong finds, upon reviewing additional x-rays and the MRI, that plaintiff does have spondylolisthesis of L5-S1 and "intractable left lower extremity radiculopathy secondary to anterolisthesis and neuroforaminal narrowing and scissoring of the nerve roots." Dr. Armstrong, the neurosurgeon, recommended that plaintiff submit to surgical fusion to treat this condition. The ALJ appears to rely heavily on Dr. Armstrong's comment that the plaintiff is not able to perform is present job's capacity with the current condition as evidence that plaintiff would be able to perform other, less strenuous work. Applying this opinion to Dr. Armstrong is simply not supported by a plain reading of Dr. Armstrong's findings. Further, Dr. Carrick, upon receiving Dr. Armstrong's findings does not alter his opinion concerning the severity of the plaintiff's condition. The only other substantial medical evidence in the record that could contradict Dr. Carrick's opinions are the findings of Dr. Armstrong, and Dr. Armstrong's findings simply do not, as currently provided for in the record, contradict those of Dr. Carrick. The ALJ

AO72A
(Rev. 8/82)

should have propounded interrogatories on Dr. Armstrong before assuming what his restrictions would have been for the plaintiff.

The ALJ also notes that at the hearing plaintiff has a tan and an apparent welding burn on his arm. From this, the ALJ deduces that plaintiff's testimony that he spends most of his days in a recliner must not be credible. The ALJ never questions plaintiff about his tan or the apparent welding burn, and it is certainly a stretch for him to draw such a conclusion based on this observation. Such evidence does not contradict the overwhelming and substantial evidence in the record.

The ALJ places much weight in the report from the plaintiff that he is still able to wash a car, mow the lawn, do garden work, go the bank and post office, and drive as evidence that the pain plaintiff alleges to suffer from is not as severe as he indicates at trial. The ALJ must be referring to plaintiff's responses to May 2003 Disability Supplemental Interview Outline. (Tr. 84-88.) The ALJ does not appear to consider at all the Disability Supplemental Interview Outline from August 2003, where the plaintiff gives much more descriptive detail about his physical abilities. (Tr. 106-110.) In this August Outline, plaintiff does indicate that he can sweep, take out the trash, wash the car, and mow the lawn, but he further notes "on some of these I can do, but I have to stop & rest. I can't do these things like I use to do." (Tr. 106.) The ALJ makes no reference to plaintiff's stated difficulties with these tasks, and thus the ALJ's reliance on these responses as evidence that contradicts Dr. Carrick's opinions and plaintiff's subjective complaints of pain is misplaced.

Finally, the fact that plaintiff received unemployment benefits for a period of time in 2003 is not, in itself, a sufficient basis to negate plaintiff's credibility. *See Cox v. Apfel*, 160 F.3d

-13-

1203, 1208 (8th Cir. 1998), *but see Salts v. Sullivan*, 958 F.2d 840, 846 n.8 (8th Cir. 1992) (acceptance of unemployment benefits, which entails assertion of ability to work, is facially inconsistent with claim of disability). Here, the ALJ fails to fully develop the record as to how long the plaintiff received unemployment benefits. Plaintiff testified that he did receive the benefits until some time in 2003, but it is unclear how long into the year he received the benefits. While this fact certainly raises a question as to plaintiff's credibility, without further information concerning the details of the benefits and the time frame in which the benefits were received and in light of the overwhelming medical evidence to support plaintiff's subjective complaints of pain, this discrepancy does not support the ALJ's decision.

On remand, the ALJ should propound interrogatories to both Dr. Carrick and Dr. Armstrong to fully develop their opinions concerning plaintiff's ability to perform work at both the light and sedentary levels.

**Conclusion:**

Accordingly, we conclude that the decision of the ALJ herein, denying benefits to the Plaintiff, is not supported by substantial evidence of record, and should be reversed. This matter should be remanded to the Commissioner for reconsideration consistent with this opinion.

DATED this 2nd day of June 2006.

**/s/ Beverly Stites Jones**
_____
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)